Jamie Lynn ALBERTER, a Minor Child through her Guardian ad Litem, Martin Alberter, Sr., Plaintiff,

v.

MCDONALD'S CORPORATION, McDonald's of Lemmon Valley, a Nevada Corporation, and Cliff A. Ledbetter, Defendants.

No. CV–N–97–576–ECR (PHA).

United States District Court,
D. Nevada.

Sept. 20, 1999.

Ian E. Silverberg, Reno, NV, for plaintiff.

Michael Malloy, Rick R. Hsu, of Walther, Key, Reno, NV, for Cliff Ledbetter and McDonald's of Lemon Valley, defendants.

JoAnne Dellaverson, John Baum, Harry Lewis, of Curiale, Dellaverson, San Francisco, CA, Eric A. Lerude, of Jones, Vargas, Reno, NV, for McDonald's Corp., defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

Plaintiff Jamie Lynn Alberter filed this action against Defendants Cliff A. Ledbetter, McDonald's of Lemmon Valley, and McDonald's Corporation. Plaintiff alleges that while employed at the Lemmon Valley establishment, she was sexually harassed by her supervisor, Bill Roberts. The complaint names five causes of action: disparate treatment based on gender, hostile work environment, constructive discharge, gender discrimination in violation of Nevada state law, and intentional infliction of emotional distress. Plaintiff seeks compensatory damages, punitive damages, and attorney's fees.

Defendant McDonald's Corporation filed its motion for summary judgment (# 28) on November 2, 1998. Plaintiff filed her opposition to the motion on November 30, 1998. Defendant McDonald's Corporation filed its reply on December 22, 1998(# 39). Defendant Cliff Ledbetter also filed his motion for summary judgment (# 34) on November 2, 1998. Plaintiff filed her opposition to the motion on November 30, 1998(# 34). Defendant Ledbetter replied on December 16, 1998(# 36). For the reasons stated below, the court will grant summary judgment on behalf of Defendants McDonald's Corporation and Cliff Ledbetter.

## BACKGROUND

Defendant Cliff Ledbetter ("Ledbetter") owned and operated the Lemmon Valley McDonald's restaurant as an authorized and licensed franchisee of Defendant McDonald's Corporation ("McDonald's") from April, 1988, to February, 1997. Ledbetter Decl. Supp. McDonald's Mot.Summ.J. ¶¶ 2, 6–7. Ledbetter employed Bill Roberts as an hourly supervisor in the restaurant from February, 1996, until November, 1996. Id. at ¶ 4. Plaintiff Jamie Alberter ("Alberter") began working at the Lemmon Valley McDonald's restaurant in May, 1996. Compl. ¶ 13; Ledbetter Decl. ¶ 3. Alberter alleges that Bill Roberts subjected her to "repeated gender-based epithets, unlawful touching and confinement." Compl. ¶ 15. Alberter was fifteen years old at the time of the alleged harassment; she did not have any previous employment experience. Id. at ¶ 13.

Alberter left work before the end of her shift on November 8, 1996, because her father came to pick her up early; her father was concerned that her stepmother would kidnap her. Alberter Dep. at 47:6–24. Alberter did not return to work at the Lemmon Valley McDonald's.

Several days after Alberter left work early and did not return, Ledbetter terminated the employment of Bill Roberts. Ledbetter Decl. ¶ 4. Bill Roberts had not shown up for an appointment with Ledbetter; Ledbetter had wanted to question Roberts about an automobile burglary which had taken place in the restaurant parking lot. Ledbetter Decl. at 73:14–74:9.

Alberter told her friend or family member, Tonya, about the alleged incidents of sexual harassment some time in December, 1996. Tonya told Alberter's father, who visited the restaurant and confronted Tracy John with the information. Martin Alberter Dep. at 145:18–146:25; 148:11–149:23. Tracy John later called and offered Alberter her job back. Id. at 149:4–

10. However, Alberter declined the offer. After timely filing with the EEOC, and having received from the EEOC notice of her right to sue, Alberter timely filed this action on October 9, 1997.

## LEGAL STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). In deciding whether to grant summary judgment, the court must view the evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party, *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should grant summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by the trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

Material facts are facts that might affect the outcome of the suit; materiality is determined by reference to the substantive law at issue in the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* If, given the evidence submitted, a reasonable jury could hold for the nonmoving party, the dispute over material fact is "genuine". *Id.* Where there is a complete failure of proof on an essential element of the case for the nonmoving party, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

## ANALYSIS

Under Title VII of the Civil Rights Act of 1964,

> [i]t shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a)(1). Sexual harassment so severe or pervasive that it alters the terms and conditions of employment and creates an abusive working environment violates Title VII. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

For the hostile work environment created by sexual harassment to be actionable under Title VII, the harassment must be both objectively and subjectively offensive; that is, the work environment must be one that the reasonable person would find hostile or abusive, and one that the victim did indeed experience as hostile or abusive. *Harris v. Forklift Systems, Inc.*, 510 U.S.

17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The objective severity of the harassment must be evaluated from the perspective of the reasonable person in the position of the plaintiff. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, ——, 118 S.Ct. 998, 1003, 140 L.Ed.2d 201 (1998); *see also Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (1995) ("Whether the workplace is objectively hostile must be determined from the perspective of a reasonable person with the same fundamental characteristics."). In making its determination as to the objective severity of the harassment, the court must consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23, 114 S.Ct. 367. Simple teasing, offhand remarks, and isolated incidents (unless they are extremely serious) do not rise to the level of harassment which alters the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, ——, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).

## A. MCDONALD'S CORPORATION

■ With limited exceptions (exceptions which primarily concern prospective employers and applicants for employment), the employer charged with discrimination under Title VII must have been the plaintiff's employer at the time of the alleged discrimination in order for the plaintiff to be able to prevail. *Vandermeer v. Douglas County*, 15 F.Supp.2d 970, 974 (D.Nev. 1998). *See Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir.1998) (To establish prima facie case under Title VII, plaintiff was required to prove that defendant was her employer); *Garcia v. Elf Atochem North America*, 28 F.3d 446, 450 (5th Cir. 1994) (Title VII liability attaches only to

plaintiff's employer). *See also City of Los Angeles v. Manhart*, 435 U.S. 702, 718 n. 33, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978) (Title VII "primarily govern[s] relations between employees and their employer, not between employees and third parties."). McDonald's Corporation argues that it is entitled to summary judgment because it was never Plaintiff's employer. Plaintiff disputes this claim.

■ Title VII defines an "employer" as follows:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . .

42 U.S.C. § 2000e(b). McDonald's does not argue that it employs fewer than fifteen persons; it does meet the definition of "employer" under Title VII. Rather, McDonald's argues that it was not Plaintiff's employer.

In order to determine whether two or more separate business entities should be treated as one employer for purposes of Title VII, the Ninth Circuit applies the four-part test initially formulated by the National Labor Relations Board for use in labor cases. *Morgan v. Safeway Stores, Inc.*, 884 F.2d 1211, 1213 (9th Cir.1989); *Childs v. Int'l Brotherhood of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir.1983). *See also Herman v. United Brotherhood of Carpenters and Joiners of America*, Local No. 971, 60 F.3d 1375, 1383–84 (9th Cir. 1995) (applying test in ADEA case).[1] The Second, Fifth, Sixth, Eighth and Tenth Circuits have also applied the same test in Title VII cases. *See, e.g., Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062 (10th Cir. 1998); *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir.1995); *Garcia v. Elf Atochem North America*, 28 F.3d 446

---

**1.** The Supreme Court first approved the four-part NLRB test in the context of labor cases in *Radio Union v. Broadcast Serv.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam).

(5th Cir.1994); *Trevino v. Celanese Corp.,* 701 F.2d 397 (5th Cir.1983); *Armbruster v. Quinn,* 711 F.2d 1332 (6th Cir.1983); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389 (8th Cir.1977).[2]

■ The four factors to be considered by the court are as follows: "(1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." *Herman,* 60 F.3d at 1383. Because the application of the four-part test in the Title VII context necessarily involves claims of employment discrimination by the entities involved, it makes sense to place greater weight on the third of these factors, centralized control of labor operations. *See Cook,* 69 F.3d at 1241; *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993); *Trevino,* 701 F.2d at 404; *Armbruster,* 711 F.2d at 1337. In particular, it would seem especially relevant to ask which business entity had the power to make employment decisions with respect to the person claiming discrimination. *See Trevino,* 701 F.2d at 404.

1. Interrelation of operations

Ledbetter owned the business equipment at the Lemmon Valley restaurant; McDonald's owned the physical plant, and Ledbetter paid rent to McDonald's. Ledbetter Dep. at 30:24–34:16. Ledbetter and his managers were wholly responsible for the day-to-day operation of the restaurant. McDonald's had no involvement in day-to-day operations. Ledbetter Decl. ¶ 20; Fike Decl. ¶ 17. Ledbetter held all necessary business licenses and permits to oper-

ate the restaurant. The two companies did not share office space, equipment, or telephone lines. Ledbetter Decl. ¶ 16; Fike Decl. ¶ 12.

Ledbetter and McDonald's maintained separate bank accounts, books, accounting records, lines of credit, payroll accounts, and personnel records. Ledbetter Decl. ¶ 17; Fike Decl. ¶ 13. Each business had its own operating budget. Also, Ledbetter and McDonald's utilized separate withholding agents for social security payments and federal, state and local taxes; the two companies had separate tax identification numbers. Ledbetter Decl. ¶ 18; Fike Decl. ¶ 14. In addition, Ledbetter had obtained insurance policies for the Lemmon Valley restaurant. Ledbetter Decl. ¶ 19.

2. Common management

None of the managers or supervisors who worked at the Lemmon Valley restaurant while Plaintiff worked there were employed by McDonald's. None of McDonald's managers worked at he Lemmon Valley restaurant; none had any control over management of the Lemmon Valley restaurant. Ledbetter Decl. ¶¶ 20, 22; Fike Decl. ¶¶ 16, 17.

3. Centralized control of labor relations

Ledbetter employed all the individuals who worked at the Lemmon Valley restaurant. Ledbetter Decl. ¶ 11. Ledbetter and the managers at the Lemmon Valley restaurant were responsible for the day-to-day operation of the restaurant and made final decisions with respect to all

---

**2.** Plaintiff argues that this test does not apply to the franchisor-franchisee relationship at issue in this case. This argument lacks merit. Various courts have applied the test in the context of franchisor-franchisee relationships. *See, e.g., Lockard,* 162 F.3d 1062; *Van Norman v. Harman Mgmt. Corp.,* No. C93–2880, 1995 WL 803508 (N.D.Cal. July 6, 1995). The Ninth Circuit has applied the test to determine whether franchisor and franchisee should be treated as one employer for the purposes of federal labor law. *NLRB v. Big*

*Bear Supermarkets,* 640 F.2d 924 (9th Cir. 1980). The Ninth Circuit has also applied the test to determine whether the employee of the local of an international labor union could sue both the local and the international entity as his or her employer under Title VII. *Childs,* 719 F.2d 1379. The court does not consider that the franchisor-franchisee relationship differs from the local-international labor union relationship to such degree as to require the application of some different test.

employment matters, including the following: hiring and firing of employees; employee discipline; employee performance evaluations; awards, promotions and demotions; scheduling, work assignments and training; approval of vacations, sick leave and other time off; and compensation, including pay raises. McDonald's was not involved in any decisions with respect to terms and conditions of employment for workers at the Lemmon Valley restaurant; it did not have the authority to hire and fire employees or make any other decisions with respect to employees at the Lemmon Valley McDonald's. Ledbetter Decl. ¶ 12; Fike Decl. ¶ 9.

Ledbetter paid the crew members and managers at the Lemmon Valley restaurant, Ledbetter Decl. ¶ 13; the employees' paychecks were drawn on an account entitled "McDonald's of Lemmon Valley Payroll Account" and Ledbetter signed the paychecks. *See id.*, Ex. B. Ledbetter also provided benefits to salaried managers, and paid unemployment compensation taxes and other payroll taxes on behalf of the employees. *Id.* ¶ 13. McDonald's paid no compensation to the Lemmon Valley restaurant employees, and paid no employment taxes on their behalf. Fike Decl. ¶ 10.

Finally, Ledbetter determined the personnel practices and policies for the Lemmon Valley restaurant. While the business manuals provided to Ledbetter as a McDonald's franchisee contain personnel policies, Ledbetter was not required to abide by those policies as a condition of the franchise agreement. Rather, Ledbetter had the option to make use of those policies or set different policies for personnel management. Ledbetter Decl. ¶ 30; Fike Decl. ¶ 29. In fact, Ledbetter did develop several of the personnel policies and personnel forms used at the Lemmon Valley restaurant, including the cash register policy, the sexual harassment policy, a procedures checklist, and an employee uniform sign-out form. Ledbetter Decl. ¶ 28, Ex. D.

### 4. Common ownership or financial control

Ledbetter was the owner and sole proprietor of the Lemmon Valley McDonald's. Ledbetter maintained the entire equity interest in the business, and retained all profits from operation, save that percentage of profits paid to McDonald's as rent (for the premises). Ledbetter Decl. ¶ 23. McDonald's had no ownership interest in or financial control over the Lemmon Valley establishment and did not provide Ledbetter with funds for operating expenses, managers' salaries, or any other purpose. Ledbetter Decl. ¶ 24; Fike Decl. ¶ 19.

The License Agreement between Ledbetter and McDonald's provides, in relevant part:

> Licensor shall provide Licensee with the business manuals prepared by McDonald's for use by licensees of McDonald's restaurants similar to the Restaurant to be operated by Licensee. The business manuals contain detailed information relating to operation of the Restaurant including (a) food formulas and specifications for designated food and beverage products; (b) methods of inventory control; (c) bookkeeping and accounting procedures; (d) business practices and policies; and (e) other management, advertising, and personnel policies. Licensee agrees to promptly adopt and use exclusively the formulas, methods and policies contained in the business manuals, now and as they may be modified by Licensor from time to time.... Such manuals, as modified by Licensor from time to time, and the policies contained therein, are incorporated in this License by reference.

License Agreement, ¶ 4 (Ledbetter Decl., Ex. A). Plaintiff attempts to rely on the language of the License Agreement in order to prove that McDonald's controlled the personnel practices of its licensees. True, the language cited above does indicate that Ledbetter, the signatory to the license agreement, was required to adhere to the policies set forth in the business

manuals, including the personnel policies. However, the personnel manual itself, made part of the agreement by reference, states that licensees may choose to adopt the policies it sets out or may set their own policies with respect to personnel.

> This chapter contains procedures and policies that affect the job, compensation, and performance of McDonald's Company employees. These recommendations are the most current and effective people practices available.
>
> *McOpCo employees* [employees of restaurants owned by the corporation] should consider the information in this chapter as company policy.
>
> *Licensees* set their own policies in this area. Their employees may read each section and choose the information that will be helpful to them in operating their McDonald's restaurant.

Fike Decl.Supp.Summ.J., Ex. A (emphasis in original). Moreover, Donald Fike, McDonald's Corporation manager testified that McDonald's issued business manuals to its licensees on an advisory basis and that licensees are not required to adopt the policies in the manuals. Donald Fike also testified that failure to adopt the suggested policies would not constitute grounds for revocation of the license agreement. Cliff Ledbetter testified that he was not required to adopt the policies outlined in the manuals and that he was free to accept or reject those policies as he chose. The court concludes that the personnel policies contained in the business manuals provided to Ledbetter do not establish control by McDonald's over employment matters at the Lemmon Valley restaurant. McDonald's exercised no control over employment decisions affecting the workers at the Lemmon Valley restaurant.

Because McDonald's did not control day-to-day operations at the Lemmon Valley McDonald's and did not have control over employment matters with respect to workers there, the argument that McDonald's may be held liable to Plaintiff for employment discrimination because Ledbetter acted as the corporation's agent must also fail. Under traditional principles of agency, an agency relationship may be created through express agreement, or it may be implied from the conduct of the parties. Consent by the principal or control that the principal exerts over the agent determine the agency relationship. See *Childs*, 719 F.2d at 1382. Here, as explained above, McDonald's did not control the operation of the Lemmon Valley restaurant. The fact that McDonald's could terminate the franchise agreement, by itself, does not establish the requisite degree of control to demonstrate that an agency relationship existed.

In addition, McDonald's expressly did not consent to an agency relationship. The License Agreement specifically provides as follows:

> Licensee shall have no authority, express or implied, to act as agent of Licensor, McDonald's, or any of their affiliates for any purpose. Licensee is, and shall remain, an independent contractor responsible for all obligations and liabilities of, and for all loss or damage to, the Restaurant and its business....

License Agreement ¶ 16. Therefore, there exists no basis upon which to impose liability on McDonald's for the acts of employees of its franchisee.

Because McDonald's was not Plaintiff's employer, McDonald's cannot be held liable to Plaintiff for employment discrimination under Title VII.[3] This conclusion

---

**3.** Plaintiff also argues that McDonald's should be held liable for the alleged harassment on the theory of direct liability, given that Marian Foran, an employee of McDonald's, witnessed inappropriate behavior by Bill Roberts toward young female crew members at the

Lemmon Valley restaurant. However, since McDonald's was not Plaintiff's employer, McDonald's had no duty to prevent or remedy any harassment with respect to Plaintiff. Furthermore, there is no evidence in the record which would suggest that Plaintiff was

applies to both the claim of disparate treatment and the claim of hostile work environment, and to the extent that it applies to any cause of action under Title VII, the claim for constructive discharge. The remaining state-law claims will be addressed below.

## B. CLIFF A. LEDBETTER

■ Ledbetter argues that he is entitled to summary judgment because he cannot be held liable for any sexual harassment of Plaintiff by her supervisor, Bill Roberts.[4] Ledbetter relies on the application of the affirmative defense to employer liability announced by the Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). In response, Plaintiff contends, first, that the affirmative defense does not apply to this case, and second, that questions of material fact about the effectiveness of the sexual harassment policy established by Ledbetter preclude entry of summary judgment.

■ Title VII does not make employers "automatically liable for sexual harassment by their supervisors." *Meritor*, 477 U.S. at 72, 106 S.Ct. 2399. However, an employer will be held vicariously liable for sexual harassment which creates an actionable hostile work environment unless the employer can prove an affirmative defense:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence, see Fed. Rule Civ.Proc. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 2292–93, 141 L.Ed.2d 662 (1998). In this case, Roberts had immediate authority over Plaintiff. Therefore, if Plaintiff is able to prove an actionable hostile work environment, Ledbetter will be vicariously liable to Plaintiff. So long as no tangible employment action was taken against Plaintiff, however, Ledbetter may assert the affirmative defense described above.

In opposition, Plaintiff argues that the affirmative defense does not apply in cases where the employer knew or should have known of the harassment. This argument has no merit. The Ninth Circuit has clearly held that the new rule announced by the Supreme Court makes the knowledge (or constructive knowledge) of the employer irrelevant:

> This new rule overturns Ninth Circuit precedent as to employer liability for Title VII sexual harassment by supervisory personnel. In such a situation, the new rule focuses on whether the harass-

---

among the young crew members involved in the incident witnessed by Marian Foran. Therefore, this argument must fail.

4. Plaintiff has testified in deposition that on various occasions Roberts put his hands in the waistband of her pants and pulled her toward him, touched her buttocks, and stroked her hair. She also made the more general statement that Roberts "talked nasty" (apparently meaning that Roberts made sexual comments) to the female employees.

Plaintiff could not remember any specific comments made by Roberts.

Ledbetter has not offered any countervailing evidence on this point. Plaintiff has thus put forth uncontroverted evidence that Roberts sexually harassed her. The question of fact remains whether the reasonable person in Plaintiff's position would have found the harassment hostile or abusive such that the requisite hostile work environment existed.

ser has immediate or successively higher authority over the victim of the harassment, not on whether the employer knew about the harassment. Thus, if the harassment is actionable and the harasser has supervisory authority over the victim, we presume that the employer is vicariously liable for the harassment. This presumption may be overcome only if the alleged harassment has not culminated in a tangible employment action, and then only if the employer can prove both elements of the affirmative defense.

*Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 956 (9th Cir.1999). This court has also held that the "knew or should have known" standard no longer applies in cases of sexual harassment by supervisors. *See Vandermeer v. Douglas County*, 15 F.Supp.2d 970, 980–81 (D.Nev.1998) (finding it no longer necessary to determine whether employer knew or should have known of the harassing supervisor's actions). Clearly, the new rule applies in this case. Therefore, Ledbetter may avail himself of the affirmative defense so long as the harassment suffered by Plaintiff did not result in some tangible employment action.

 When discrimination against an employee results in a tangible employment action, the employer is subject to vicarious liability. *Burlington Indus.*, 118 S.Ct. at 2268.

A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.... A tangible employment action in most cases inflicts direct economic harm. As a general proposition, only a supervisor, or other person acting with the authority of the company, can cause this sort of injury.... Tangible employment actions are the means by which the supervisor brings the official power of the enterprise to bear on subordinates. A tangible employment decision requires an official act of the enterprise, a company act. The decision in most cases is documented in official company records, and may be subject to review by higher level supervisors. The supervisor often must obtain the imprimatur of the enterprise and use its internal processes. For these reasons, a tangible employment action taken by the supervisor becomes for Title VII purposes the act of the employer.

*Burlington Indus.*, 118 S.Ct. at 2268–69 (internal citations omitted). Plaintiff has not identified any tangible employment action taken against her in this case, other than the claim of constructive discharge.

 Constructive discharge occurs when an employee leaves her position under circumstances where any reasonable person would find the conditions of employment intolerable. *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir.1998). Constructive discharge does not meet the definition of "tangible employment action" as described above. First, while constructive discharge may come about as the result of actions taken by a supervisor, it is not an action taken by an employee's supervisor. In addition, while it may come about as the result of actions taken by a supervisor, it also may come about as the result of actions taken by co-workers. Constructive discharge is not an official act of the enterprise. Therefore, in the present suit, there was no "tangible employment action" taken against Plaintiff. The affirmative defense is available in this case.

1. Employer's exercise of reasonable care

 Under the first prong of the affirmative defense, the employer must show that he or she exercised reasonable care to prevent and promptly correct any sexual harassment. Depending upon the circumstances, reasonable care may require the establishment of some formal policy against sexual harassment which provides some procedure for making complaints or

bringing grievances to the attention of management.

While proof that an employer had promulgated an antiharassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense.

*Faragher*, 118 S.Ct. at 2293. However, the existence of such policy, by itself, does not necessarily satisfy the requirement that the employer exercise reasonable care. In *Faragher*, the district court found that the defendant employer had failed to disseminate the policy amongst its employees and made no attempt to monitor the conduct of its supervisors. Also, the record showed that the harassment policy in place did not include any provision by which an employee could bypass any harassing supervisor in bringing a complaint. Under those circumstances, the Supreme Court held that as a matter of law, the defendant employer had failed to exercise reasonable care. *Id.* at 2293.

Here, the record shows that Ledbetter did have an antiharassment policy in place, which was regularly disseminated to all employees. The policy allowed an employee to bring a complaint of harassment directly to any manager, including Ledbetter; this procedure allowed an employee to bypass the harassing supervisor in making a complaint.

Ledbetter issued crew handbooks to all new employees when they began working at the Lemmon Valley McDonald's. Ledbetter Dep. at 44:4–25; Wayne Brightshue Dep. at 27:18–24. The crew handbook contains the following paragraph, which explains the restaurant's policy on sexual harassment:

Sexual Harassment. At this McDonald's franchise, we prohibit sexual harassment of any employee because it is intimidating, an abuse of power, and is inconsistent with our policies, prac-

tices and management philosophy. Sexual harassment is defined as unwelcome sexual advances, requests for sexual favors, and other verbal or physical contact of a sexual nature. Sexual harassment is conduct that interferes with another person's work performance or creates an intimidating, hostile or offensive work environment.

Ledbetter Mot. for Summ. Judgment, Ex. 3 at 11. The handbook also contains the following statement about the steps the crew member should take if he or she experiences or witnesses discrimination or sexual harassment:

Employees who feel subjected to discrimination or harassment should immediately report it to management, including their personnel representative, their immediate supervisor, their supervisor's supervisor or the Owner/Operator. We encourage employees to freely report these incidents and prohibit retaliation for making or being a witness to such a report. We will thoroughly investigate discrimination and harassment reports and will do so confidentially. If the report is determined to be true, disciplinary action will be taken against the offender, ranging from a warning to termination, depending on the severity of the misconduct.

*Id.* The crew handbook also contains the following "open door" policy:

Open Door. At our McDonald's, we value the results we have gained by keeping the door open for communication from any employee. If you feel you are not getting your message or ideas across, or if you have a problem you cannot resolve, contact your manager.

*Id.* at 6. Restaurant managers who guided new employees through orientation brought the sexual harassment policy to the attention of the new employees. Wayne Brightshue Dep. at 27:18–24; Darri Brightshue Dep. at 24:20–24. Tracy John, one of the salaried managers at the Lemmon Valley McDonald's, testified in deposi-

tion that she would tell all new employees during the orientation process that they could talk to any manager, up to and including Cliff Ledbetter, about any problem they were having. John Dep. at 49:9–23. In addition, an anti-discrimination poster with information about the restaurant's sexual harassment policy and legal rights was posted in the crew room. Ledbetter Dep. at 71:2–16; John Dep. at 50:1–10; Wayne Brightshue Dep. at 27:18–20.

Finally, Ledbetter had developed his own policy with respect to sexual harassment, which stated that sexual harassment would not be tolerated and that any complaints would be investigated and followed by appropriate action. Ledbetter Mot. for Summ. Judgment, Ex. 6. Ledbetter required his salaried employees to read and acknowledge this policy, Wayne Brightshue Dep. at 30:11–17, and also discussed the policy with salaried and hourly management employees, Ledbetter Dep. at 50:22–51:5.

Finally, on the one occasion when an employee at the Lemmon Valley restaurant complained of sexual harassment by Bill Roberts, Ledbetter counseled Roberts the following day. Ledbetter informed Roberts that the comment made ("come sit on my lap") was totally unacceptable and that if Roberts said or did anything in future which could be construed as sexual harassment, Roberts would be immediately terminated. Ledbetter also followed up with the employee who submitted the complaint; he asked her whether she had had any other problems with Roberts and was informed that she had not. He asked whether she could work with Roberts and

she said that she could. Finally, he told her to report immediately any problems to him, Ledbetter. Ledbetter Mot.Summ.J., Ex. 9 (Ex. 9 to Ledbetter Dep., authenticated at 67:21–68:3).

Alberter does not dispute any of the above-related facts, although she did testify in deposition that no one at the Lemmon Valley McDonald's told her what to do if she were sexually harassed on the job. Alberter Dep. at 148:5–18. She testified that based on common sense she thought that the appropriate thing to do would be to go to one of the managers. *Id.* at 148:5–149:10. Alberter also testified that she could not remember whether she received her own copy of the crew handbook. *Id.* at 146:7–147:23.

The undisputed facts cited above admit of only one conclusion. Based on the facts above, the court finds that Ledbetter exercised reasonable care to prevent and promptly correct any instances of sexual harassment.[5]

### 2. Employee's unreasonable failure to act

■ Under the second prong of the affirmative defense, the employer must show that the employee who claims to have been sexually harassed unreasonably failed to make use of any preventive or corrective procedures made available by the employer, or otherwise unreasonably failed to prevent the harm.

> [W]hile proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure pro-

---

**5.** Alberter argues that the deposition testimony of William O'Donohue, Ph.D., who expressed concern about the effectiveness of the antiharassment policy implemented by Ledbetter, creates a genuine issue of material fact as to whether Ledbetter exercised reasonable care in this area. However, the excerpts of the O'Donohue deposition which have been made part of the record (Opp. to Ledbetter's Mot.Summ J., Ex. 6) do not contain any such testimony. Furthermore, the document attached to the Opposition as Exhibit 7 (appar-

ently a report produced by Dr. O'Donohue) may not be considered by the court. *See* Fed.R.Civ.P. 56(c) (papers to be considered on summary judgment motion include pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any) and Fed.R.Civ.P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.").

vided by the employer, a demonstration of such failure will normally·suffice to satisfy the employer's burden under the second element of the defense.

*Faragher*, at 2293. Thus, absent special circumstances, the fact that the sexual harassment plaintiff unreasonably failed to make use of the complaint procedure established by her employer will establish the second part of the affirmative defense.

In this case, Plaintiff never told anyone about the sexual harassment until some weeks after she had stopped working at the Lemmon Valley McDonald's. Plaintiff testified that she never told any manager at the Lemmon Valley restaurant about the alleged sexual harassment. Alberter Dep. at 116:4–117:16; 124:11–14; 308:7–15. She also testified that she figured that one would go to a manager if harassment occurred, but that she was embarrassed to do so:

> A: I figured you would go to a manager, but I was embarrassed to, so—I was scared of what Bill was going to look at me funny and stuff. I was scared of that, so I didn't.
>
> And Dion did it before me so I knew if she did it, you know, maybe it would be [taken] care of. By that time I quit, so—

Alberter Dep. at 148:20–149:1. Thus, plaintiff did not inform any manager at work about the sexual harassment, primarily because she was embarrassed and apprehensive about the reaction that she would get from the harasser. Plaintiff also testified that while she was afraid of Tracy John, she was not afraid of Cliff Ledbetter, whom she considered "sweet". *Id.* at 150:1–3; 150:25–151:7.

While the court recognizes that the plaintiff's age and relative unfamiliarity with the adult workplace (as well as the fact that her harasser was an older man) may have contributed to her reluctance to talk about the problems she faced at work, those factors cannot excuse the plaintiff's failure to bring the problem to the attention of someone at work. The Supreme Court has made very clear that part of the responsibility to act in sexual harassment cases lies with the victim of sexual harassment, who has the duty to mitigate or avoid harm by such means as are reasonable under the circumstances. *Faragher*, 118 S.Ct. at 2292. This includes taking advantage of safeguards that the employer has made available, bringing the offending conduct to the attention of the employer, who can then act on the information. *See id.* The Supreme Court adopted the affirmative defense in question "[i]n order to accommodate the principle of vicarious liability for harm caused by misuse of supervisory authority" and the "equally basic policies" of Title VII, "encouraging forethought by employers and saving action by objecting employees". *Faragher*, 118 S.Ct. at 2292; *Burlington Indus.*, 118 S.Ct. at 2270.

The parallel requirements that the employer take reasonable steps to prevent and correct inappropriate behavior and that injured employees take reasonable steps to avoid harm support the most important goal of Title VII:

> Although Title VII seeks to make persons whole for injuries suffered on account of unlawful employment discrimination, its primary objective, like that of any statute meant to influence primary conduct, is not to provide redress but to avoid harm.

*Faragher*, 118 S.Ct. at 2292 (internal citations omitted). If all employees who were too embarrassed to bring complaints of sexual harassment to the attention of their employers were excused from their responsibilities, the primary goals of the statute would be severely undercut. Discussing inappropriate sexual behavior with managers or employers will cause some degree of discomfort in almost all cases. Many victims of sexual harassment fear reprisals or negative reaction. Yet the high court has stated that it is, at least in part, the duty of the victim of sexual harassment to take action. The objecting

employee must make use of those preventive or remedial measures available, as far as is reasonable.

Plaintiff did not take advantage of those measures available to her, and has advanced no compelling reason for her failure to do so. The court finds that the undisputed facts demonstrate that Plaintiff failed to take advantage of corrective opportunities at her disposition. No reasonable jury could find that this failure was reasonable. The fact that no reasonable jury could fail to find for Ledbetter on both elements of the affirmative defense warrants entry of summary judgment on the claim of hostile work environment.

Plaintiff has also brought the claim of disparate treatment on the basis of gender. However, Plaintiff has not alleged any facts with respect to disparate treatment other than those facts which support the claim for sexual harassment. In the absence of discriminatory conduct on the part of the employer, conduct distinct from the incidents of sexual harassment, the disparate treatment claim will not lie. Plaintiff does not specify whether she brings her claim for constructive discharge under Title VII or under the common law, but it fails for the same reason. According to Plaintiff, the sexual harassment was the conduct which forced her to end her employment at the Lemmon Valley McDonald's. Because the affirmative defense applies, Ledbetter cannot be held liable for the actions of supervisor Bill Roberts which caused the alleged constructive discharge.

## CONCLUSION

Because McDonald's was not Plaintiff's employer, McDonald's cannot be held liable to Plaintiff for sex-based discrimination under Title VII. McDonald's is therefore entitled to summary judgment on the Title VII claims brought by Plaintiff. Because no reasonable jury could fail to find for Cliff Ledbetter on the affirmative defense available to employers sued for sexual harassment committed by supervisors, Ledbetter is entitled to summary judgment on the Title VII claims brought by Plaintiff. The court will therefore dismiss all federal claims. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the remaining state-law claims.

**IT IS, THEREFORE, HEREBY ORDERED** that the motion for summary judgment brought by Defendant McDonald's Corporation (# 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment brought by Defendant Cliff Ledbetter (# 29) is **GRANTED.**

Summary judgment having been granted as to Defendants McDonald's Corporation and Cliff Ledbetter, and Defendant McDonald's of Lemmon Valley having been dismissed from this action by previous order, this action is **DISMISSED.** The Clerk shall enter judgment accordingly.