**Brynda IVAN, Plaintiff**

v.

**KENT STATE UNIVERSITY,
et al., Defendants.**

**No. 5:93 CV 0779.**

United States District Court,
N.D. Ohio,
Eastern Division.

Sept. 14, 1994.

Katherine Hart Smith, Wagner, Smith, Patterson & Yates, Akron, OH, for plaintiff.

Dennis R. Wilcox and Jack D. Maistros, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, for defendants.

## MEMORANDUM OF OPINION

WELLS, District Judge.

### I. BACKGROUND

In June, 1993, Plaintiff, Brynda Ivan ("Ivan") filed an amended complaint alleging violations of 42 U.S.C. § 2000e ("Title VII") and 20 U.S.C. § 1681(a) ("Title IX") by Defendants Kent State University ("Kent State"), Angela Neal (Psychology Professor, "Neal"), and John Akamatsu (Psychology Professor, "Akamatsu"). Defendants' Motion for Summary Judgment (Docket No. 53 & 54) is before the Court for consideration. The Court has reviewed the memoranda, affidavits and certificates submitted by the parties and oral arguments of counsel during the hearing held on August 12, 1994.

For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

### II. FACTS

The parties do not dispute the material facts. Ivan joined a M.A./Ph.D. program ("the Program") at Kent State in August, 1989. The Program included academic course-work and clinical practice, called a "clinical practicum." A student in the Program is expected to complete a master's thesis within two years of Program commencement. A minimum grade point average of 3.3 is required for progress through the Program.

Ivan was provided with a full tuition scholarship and a graduate student assistantship stipend ranging from $588.90 to $838.90 per month. Three contracts, authorized by Joseph Danks ("Danks"), Kent State Psychology Department Chairman, provided for Ivan's employment as a graduate assistant. Kent State withheld state retirement benefit contributions from Ivan's pay.

In the Spring of 1991, Ivan became pregnant. In March, 1991, she was informed that:

> it is the opinion of the clinical faculty that your performance generally has been satisfactory. Your GPA is a bit lower that [sic] we will want it to be when you are considered for admission to the doctoral program, but we are confident that you can improve it a bit by then. We are aware that you are working on your thesis with Dr. Crowther and are making progress. Your practicum performance seems to be about average for students at your level of training.

Plaintiff's Exhibit 5. Through the summer semester of 1991, Ivan's grade point average was less than 3.3.

During the Summer of 1991, Ivan informed Akamatsu, her clinical practicum supervisor, that she was expecting a child in December, 1991. Ivan requested relief from assignment of clinical practicum cases during the Fall, 1991 semester only. Ivan contacted Danks and requested permission to forego employment as a graduate assistant during the 1991–92 school year.

After giving birth in December, 1991, Ivan resumed her studies. When she returned to Kent State, however, she was not assigned to a clinical practicum for the Spring semester. Ivan spoke with Akamatsu about his failure to assign her to a practicum. Akamatsu advised Ivan of his concern that she would do a "half-assed job" with her clients because of her childcare responsibilities. Nonetheless, Akamatsu then assigned Ivan to a clinical practicum supervised by Neal but, "assigned [Ivan] cases on a gradual basis so that [h]e could monitor the impact, if any, of her newborn on her ability to perform in practicum." Plaintiff's Exhibit 6.

In April, 1992, the Kent State Clinical Training Committee, (comprised of the clinical faculty members in Kent State's psychology department, "CTC") determined that Ivan required an additional year of clinical experience before community placement. Neal gave Ivan an "In Progress" ("IP") semester grade. The IP grade was not a failing grade. Ivan was informed she could receive a satisfactory grade if she continued

to improve her practicum performance through the Summer and Fall of 1992.

Neal's evaluations stated in relevant part:

As an example, Brenda [sic] failed to recognize the frustration expressed by the male member of the couple. This problem was exacerbated by the fact that Brenda had negative feelings towards the male. Brenda was able to recognize these feelings on her own, yet was for the most part unable to hear what the male was saying without a supervisor pointing it out.... Brenda appears to have the tendency not to take the time to conceptualize her cases. In short, she doesn't appear to take the time to think about her cases. In order to address this problem, remediation in the form of Brenda listening to and coding sessions, as well as bringing session by session treatment plans to the supervisor was instituted.

Progress notes were somewhat behind.... At the present time, Brenda is unable to function independently. She requires close supervision.

Brenda has a strong desire to be a therapist. This desire is an indicator that intense remediation may be successful ... Simply stated, Brenda's skills are underdeveloped and she appears to lack the ability to function independently. Supervision is at a concrete level with Brenda being given specific instructions as to what to do and remedial tasks.

Plaintiff's Exhibit 7.

In May, 1992, Clinical Training Director Michael Hirt sent Ivan a letter stating:

The clinical faculty is very concerned about your performance in the program. While no single aspect of your performance gives rise to our concerns, the cumulative effect of your grades, thesis progress, and functioning in the practicum leads us to consider your performance as very marginal. Your grades suggest minimal classroom performance and do not reflect the level of excellence usually associated with admission to doctoral study. Similarly, your practicum performance appears to have barely met minimal levels of adequacy, but does not reflect progressive development of clinical skills. Indeed, the small number of clients with whom you have worked and your relatively poor responsiveness to supervision have led the CTC to conclude that you need another year of practicum experience before you will be considered for placement in a community agency.... We are also concerned about your progress toward completing your thesis, which is slower than we expect. You are finishing your third year in the program and your thesis topic was approved over a year ago, yet your thesis is not yet completed.

Defendants' Exhibit C.

Ivan requested that Akamatsu independently evaluate her Spring, 1992 performance. Akamatsu substantially agreed with Neal's findings. Aside from the IP grade, Ivan's grades improved during the Fall 1991 and Spring, 1992 semesters.

Ivan successfully defended her M.A. thesis before a panel that included Akamatsu, received her diploma, and took a leave of absence from the Program in the Spring of 1993.

## III. CLAIMS

Ivan complains that Defendants discriminated against her because of her gender and pregnant condition in assigning the IP grade. She asserts that the IP grade resulted in the loss of her employment as a graduate assistant at Kent State.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when, "pleadings, depositions, answers to interrogatories, ... together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). After adequate time for discovery, summary judgment should be granted against a party bearing the burden of proof if they fail to make a sufficient showing on an essential element of their case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Summary judgment should be

granted if under governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

## V. EMPLOYMENT DISCRIMINATION CLAIM

Defendants argue that summary judgment is proper because Ivan lacks an employment relationship sufficient to trigger Title VII. Defendants also claim Ivan has failed to establish a prima facie case of employment discrimination and that Ivan's treatment was motivated by legitimate, non-discriminatory criteria.

### 1. Application of Title VII

Under Title VII, it is unlawful for an employer, "to discriminate against any individual with respect to his [sic] compensation, terms conditions, or privileges of employment" and "to limit ... his [sic] employees ... in any way which would ... tend to deprive any individual of employment opportunities or otherwise affect his [sic] status as an employee, because of ... race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)-(2) (1981). "The term 'employee' means an individual employed by an employer." 42 U.S.C. § 2000e(f) (1991).

The Sixth Circuit has not addressed whether a graduate student assistant is an "employee" for purposes of Title VII. Defendants cite *Pollack v. Rice University*, 28 F.E.P. Cases 1273 (S.D.Texas 1982), *aff'd*, 690 F.2d 903 (5th Cir.) (unpublished), *cert. denied*, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983), in support of the proposition that Ivan cannot bring suit under Title VII. In *Pollack*, the plaintiff argued he was denied admission to a chemistry graduate program and employment as a Chemistry Instructor at Rice University because of his religious beliefs. The court held the status of a graduate student was that of "student" not "employee" under Title VII. *Id.* at 1274 (footnote omitted).

■ To determine if an individual should be considered an employee under Title VII, a Court must look to the economic realities of relationships between individuals and employers. *Id.* at 1342. An examination of economic realities of employment relationships is useful because economic dependance increases an employees' susceptibility to discriminatory practices under Title VII. *Kirby v. Robby Len Swimfashions*, No. 89–6038, 1990 WL 72322, at *1–2 (6th Cir. June 1, 1990). The "economic realities test" allows a case-by-case determination of employment status based on the totality of the circumstances of employment. *Lilley v. BTM Corp.*, 958 F.2d 746, 750 (6th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 376, 121 L.Ed.2d 287 (1992).

■ The Sixth Circuit has broadly interpreted the term "employee" for Title VII purposes. *Armbruster v. Quinn*, 711 F.2d 1332, 1340 (6th Cir.1983). In *Armbruster*, the court cited the 1972 Amendment to Section 701(b) of the Civil Rights Act of 1964, which reduced the statutory minimum number of employees from twenty-five to fifteen, as an indication of Congress' desire to encourage broad interpretations of the Act. *Id.* at 1336–37. The court concluded:

> The primary purpose of the Civil Rights Act, and Title VII in particular, is remedial. Its aim is to eliminate employment discrimination by creating a federal cause of action to promote and effectuate its goals. To effectuate its purpose of eradicating the evils of employment discrimination, Title VII should be given a liberal construction.

*Id.* at 1336. Furthermore, the broad terms, precise exceptions, and legislative history of the Act are "directed toward a test of coverage to all those who are in a position to suffer the harm the statute is designed to prevent, unless specifically excluded." *Id* at 1341. Therefore, doubts and ambiguities should be resolved in favor of coverage. *Id.*

■ The fact that Ivan was a student does not negate her employee status. Three contracts provided for Ivan's employment, in which she agreed to "render service" to Kent State. Plaintiff's Ex. B. Ivan earned a graduate assistantship stipend in the amount of $588.90 to $838.90 per month. *Id.* Kent State withheld from her pay state retirement benefit contributions and agreed to pay her compensation "in compliance with state and

federal law." *Id.* The totality of the circumstances of Ivan's graduate assistantship demonstrates she was an employee under the terms of Title VII.

Furthermore, the "economic realities" of Ivan's graduate assistantship demonstrate she was in a position to suffer discriminatory treatment. *See Davis v. Weidner,* 596 F.2d 726, 731–32 (7th Cir.1979). *See also* Len Biernat, Subjective Criteria in Faculty Employment Decisions under Title VII: A Camouflage for Discrimination and Sexual Harassment, 20 U.C.Davis L.Rev. 501 (1987) ("a court, in enforcing fair employment laws, cannot neglect its statutory responsibility to ensure fair employment practices in institutions of higher education.") Given the broad remedial purposes of Title VII, Ivan should be entitled to invoke its protection.

### 2. *Analysis of Title VII Claim*

■ Summary judgment is proper for Kent State because Ivan has not set forth a prima facie case of employment discrimination. A prima facie case of employment discrimination requires a showing of: 1) membership in a protected class; 2) discharge or adverse treatment; 3) qualification for the position; and 4) credible, direct evidence of discriminatory intent. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

Ivan argues that Kent State discontinued her monetary remuneration in connection with the Program. However, no evidence of discriminatory intent in the loss of Ivan's employment has been presented here. Ivan has failed to set forth a prima facie case of employment discrimination.

### VI. EDUCATION DISCRIMINATION

■ Title IX provides that, "No person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program." Neal's assignment of an IP grade to Ivan may be analyzed under Title IX.[1]

The Sixth Circuit has not addressed burdens of proof in a Title IX claim. Two Circuits have found the *McDonnell Douglas Corp. v. Green* standard applies in Title IX cases similar to Ivan's. *Andriakos v. University of S. Indiana,* 19 F.3d 21 (7th Cir. 1994); *Lipsett v. University of Puerto Rico,* 864 F.2d 881 (1st Cir.1988).

In *McDonnell,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972), the Court held that after a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate some legitimate reason for the adverse action. 411 U.S. at 803–04, 93 S.Ct. at 1824–25. If the employer articulates a non-discriminatory reason, the plaintiff must show that the employer's stated reason is a pretext. *Id.*

■ Ivan has presented evidence sufficient to make a prima facie case of education discrimination in the assignment of the IP grade. In March, 1991, Ivan was informed that she was progressing satisfactorily through the program. Plaintiff's Exhibit 5. Akamatsu's blatantly discriminatory statements regarding Ivan's practicum performance provide credible, direct evidence of discriminatory intent. There is no dispute that Ivan was pregnant and that she received the IP grade.

■ However, Ivan's Title IX claim fails under the *McDonnell* burden-shifting standard. Defendants have articulated legitimate, non-discriminatory reasons for Ivan's IP grade. They assert that Ivan was not qualified to serve her counseling clients adequately. Neal's evaluations support the legitimacy of this allegation.

Under *McDonnell,* Ivan must respond to Defendants' proffered legitimate reasons for adverse treatment with additional evidence of pretext. *See Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078 (6th Cir.1994) (recommended for full-text publication). Ivan has not provided any evidence suggesting that Defendants' legitimate reasons for assigning the IP grade have no basis in fact,

---

**1.** Ivan's loss of employment as a graduate assistant could be analyzed under Title IX as well. *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982). For the reasons discussed in the previous section, Ivan has failed to set forth a prima facie case of employment discrimination under Title IX.

or did not actually motivate the assignment of the IP grade.

In *Andriakos*, the court addressed a situation similar to Ivan's case. Plaintiff, a former nursing student, did not show that the University's legitimate nondiscriminatory reasons for his treatment were pretextual:

[No] evidence from which a reasonable factfinder could conclude that his instructors' accounts of his significantly substandard clinical performance were untrue, or that similar lapses on the part of women nursing student were overlooked. Indeed, ... Andriakos does not dispute that the alleged incidents of unsafe clinical practice and other unprofessional conduct actually occurred. The defendants are therefore entitled to summary judgment.

*Id.* at 21.

Because Ivan has failed to provide evidence under the *McDonnell* standard, summary judgment is granted for Defendants on Ivan's education discrimination claim.

IT IS SO ORDERED.

## *JUDGMENT ENTRY*

Pursuant to the Memorandum of Opinion filed in this matter, judgment is entered for Defendants on all counts of Plaintiff's complaint. Plaintiff to pay costs.

IT IS SO ORDERED.