Jolie BAETZEL, Plaintiff,

v.

**HOME INSTEAD SENIOR CARE,**
**et al., Defendants.**

No. 1:04 CV 0119.

United States District Court,
N.D. Ohio,
Eastern Division.

May 17, 2005.

---

Jihad M. Smaili, Jihad M. Smaili, Esq., L.L.C., Matthew R. Basinger, Jihad M. Smaili, Esq., L.L.C., Cleveland, for Plaintiff.

Defendant Home Instead Senior Care, David D. Ernst, Pansing Hogan Ernst & Bachman, Lisa M. Meyer, Pansing, Hogan, Ernst & Bachman LLP, Omaha, NE, Steven J. Miller, Goodman Weiss Miller, Defendant GEO Care, Inc., doing business as Home Instead Senior Care, Steven B. Potter, Dinn, Hochman, Potter & Levy, Cleveland, for Defendants.

*MEMORANDUM AND ORDER GRANTING DEFENDANT HOME INSTEAD, INC'S. MOTION FOR DISMISSAL AND SUMMARY JUDGMENT*

WELLS, District Judge.

Plaintiff Jolie Baetzel ("Baetzel") brought this action pursuant to Title VII and Ohio state statutory and common law to remedy claims of sexual harassment, retaliation, intentional infliction of emotional distress, and wrongful discharge against defendants Home Instead, Inc. ("Home Instead"), GEO Care, Inc. ("GEO Care") and Geoffrey Moore ("Mr.Moore"). (Docket # 1). Ms. Baetzel was employed as a Community Service Representative for GEO Care, a franchise operation owned by Mr. Moore in North Olmsted, Ohio providing non-medical companionship and domestic care services for the elderly. Mr. Moore and GEO Care operate, through agreement, as a franchisee of franchisor Home Instead based in Omaha, Nebraska.

Prior to the instant Order, Home Instead filed a Motion to Dismiss and a Memorandum in Support of that motion (Dockets # 36, 37) to which Ms. Baetzel responded in opposition. (Docket # 41). Home Instead filed a reply. (Docket # 44). This Court issued an Order to convert Home Instead's Motion to Dismiss into a Motion for Summary Judgment and invited the parties to supplement their existing briefs on the threshold issue of whether franchisor Home Instead stood in the shoes of an employer with regard to Ms. Baetzel. (Docket # 59). Both parties responded, with Ms. Baetzel filing a supplemental brief (Docket # 64) and Home Instead filing a replacement memorandum. (Docket # 66).

Ms. Baetzel maintains that together, Home Instead and GEO Care constitute a single employer, while Home Instead considers Ms. Baetzel an exclusive employee of GEO Care. Home Instead also urges this Court to consider Ms. Baetzel's failure to include Home Instead in her complaints to the Ohio Civil Rights Commission ("OCRC") and Equal Employment Opportunity Commission ("EEOC") as a jurisdictional bar because Home instead does not share a clear identity of interest with GEO Care sufficient to provide notice. Ms. Baetzel responds she intended to include Home Instead in her state and federal discrimination charges and listed GEO Care dba Home Instead Senior Care, which is the franchise name.

For the reasons set forth below, this Court finds that Home Instead was not Ms. Baetzel's employer. Accordingly, this Court grants Home Instead's motion for summary judgment against Ms Baetzel's gender discrimination and harassment claims under federal and state law. This Court also dismisses with prejudice Ms. Baetzel's state law claims of wrongful discharge and intentional and negligent infliction of emotional distress against defendant Home Instead.

## I. BACKGROUND

### A. The relationship between Home Instead and GEO Care.

Home Instead is a Nebraska corporation based in Omaha which franchises the operation of non-medical companionship and domestic care services for the elderly utilizing standards and procedures, trademarks, domain names, service marks and other commercial symbols under the name of "Home Instead Senior Care." (Affidavit of Jeffrey Huber ¶ 3). On 9 November 1998, Home Instead entered into a standard franchise agreement ("Agreement") with Mr. Moore as the sole shareholder of GEO Care, to own and operate a Home Instead Senior Care in North Olmsted, Ohio. (Huber Aff. ¶ 3).

The Agreement required GEO Care to comply with the material terms of the Agreement including prescribed formats of practices and procedures of providing senior care service referred to by Home Instead as "the System." (Huber Aff. ¶ 13). The Agreement also required regular royalty payments from GEO Care to Home Instead as well as fidelity to the representation of the franchise through certain trademarks and symbols owned by Home Instead. (Huber Aff. ¶ 6).

The evidence is uncontroverted that through the Agreement, Home Instead provided training to Mr. Moore regarding the operation of GEO Care's Home Instead Senior Care franchise. (Huber Aff. ¶ 13). Home Instead maintains that all obligations related to the day-to-day operations of the franchise, and particularly employment decisions, were entirely GEO Care's responsibility and that pursuant to the Agreement, GEO Care had the right to operate its business in the manner that it chose within the parameters established by the material terms of the Agreement. (Huber Aff. ¶ 12, 21, 16, 27, 29, 30).

Ms. Baetzel maintains that Home Instead and GEO Care exhibited an interrelation of operations such that they should be considered a single-employer for liability purposes. As evidence of that interrelationship, Ms. Baetzel provides the Operations Manual ("Manual") utilized by Mr. Moore in his training at the advent of his purchase of a franchise in North Olmsted. (Plaintiff's Supplemental, Exhibit O). The Manual covers such topics as service and pricing, recruitment, training, advertising and public relations, service inquiries, administration, marketing and supplies. (Plaintiff's Memo in Opposition, Exhibit A–5). With regard to recruitment, the Manual provides sample interview forms and questions, employment agreements, generic employment policies, and position de-

scriptions. (Plaintiff's Opposition, Exhibits A–1 through A–4).

Home Instead insists that the information provided to Mr. Moore through the Manual was merely advisory in nature and not binding on how Mr. Moore chose to operate the GEO Care franchise. (Huber Aff. ¶ 13; Moore Aff. ¶ 16, 27, 29, 30). Mr. Moore maintains that he retained total discretion over: the hiring, disciplining and firing of all employees; evaluating employee performance, including decisions concerning awards, promotions, demotions, and terminations; directing employee scheduling, work assignments and training; and approving vacations and leave time. (Moore Aff. ¶ 13).

### B. Ms. Baetzel's termination from GEO Care.

According to the plaintiff's complaint, Geoffrey Moore hired Ms. Baetzel on 16 November 2002 to fill the position of Community Service Representative/Care Coordinator at GEO Care in North Olmsted, Ohio. (Plaintiff's Complaint ¶ 6; Affidavit of Geoffrey Moore ¶ 6). Mr. Moore terminated Ms. Baetzel on 27 May 2003. *Id.*

Subsequent to her termination, on 13 July 2003, Ms. Baetzel filed a charge of sexual discrimination and retaliation with the OCRC against Mr. Moore and GEO Care dba Home Instead Senior Care. (Plaintiff's Complaint ¶ 8). The OCRC charge brought by Ms. Baetzel did not name the franchisor, Home Instead, Inc. (Baetzel Affidavit ¶ 2). Mr. Moore did not provide a copy of Ms. Baetzel's OCRC charge to Home Instead and did not discuss the charge with the franchisor. (Moore Aff. ¶ 33). On 8 January 2004, the OCRC closed Ms. Baetzel's charge in response to her request for a withdrawal of charges from the OCRC so that she might receive a Notice of Right to Sue on her discrimination charge from the EEOC. (Plaintiff's Complaint, Exhibit A). Ms.

Baetzel filed suit in this case on 23 January 2004 and received a Notice of Right to Sue from the EEOC on 4 Jun 2004. *Id.*

Ms. Baetzel brings five causes of action against Mr. Moore, Geo Care and Home Instead, Inc. for: (1) violating Title VII of the 1964 Civil Rights Act and Title I of the 1991 Civil Rights Act, (2) the Ohio Fair Employment Practices Law, (3) for the intentional inflection of emotional distress, (4) retaliation, and (5) wrongful discharge. In her Complaint, Ms. Baetzel recounts that after Mr. Moore hired her on behalf of his franchise, GEO Care, he initiated unwanted sexual advances toward her in the workplace and terminated her when she rebuffed those advances. (Complaint ¶¶ 9–14; Baetzel Deposition 84:11). The evidence indicates that Ms. Baetzel did not complain of Mr. Moore's treatment to anyone at Home Instead. (Baetzel Depo. 84:13; Baetzel Aff. ¶ 8, 9). Additionally, there exists no controversy in the evidence that Mr. Moore supervised Ms. Baetzel's activities (Moore aff. ¶ 13), paid her from a GEO Care account (Moore Aff. ¶¶ 6, 14), made the decision to terminate her (Moore Aff. ¶¶ 6, 18), and did not discuss Ms. Baetzel's employment, job performance or termination with anyone from Home Instead. (Moore Aff. ¶ 18).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party:

always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (*quoting Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994) (marking as standard that the plain-

tiff must present "more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff"). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

## III. LAW AND ANALYSIS

### A. Lack of Subject Matter Jurisdiction Over the Title VII Claims.

Home Instead urges this Court to bar Ms. Baetzel's Title VII claims for lack of subject matter jurisdiction because the franchisor was not named in either of the plaintiff's charges with the OCRC or the EEOC. Ms. Baetzel responds that when she named the entity GEO Care dba Home Instead Senior Care in her charging documents she intended to name the entity now identified as defendant franchisor Home Instead, Inc.

■ As a jurisdictional prerequisite to filing suit under Title VII, the plaintiff must first file a timely charge of discrimination with the EEOC against the party named as a defendant. 42 U.S.C. § 2000e–5(f)(1); *Knafel v. Pepsi–Cola Bottlers of Akron, Inc.*, 899 F.2d 1473, 1480

(6th Cir.1990). This naming requirement ensures the defendant has notice of the EEOC proceedings, allowing it to preserve evidence relevant to the discrimination claim. *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir.1987). The naming requirement also affords the defendant an opportunity to participate in the EEOC conciliation process in an effort to spare the parties from time consuming and expensive litigation. *Id.* at 245.

■ The failure to name a defendant as a respondent in the EEOC charge does not necessarily precipitate dismissal. Indeed, the unnamed party will not be dismissed from a Title VII suit if it shares an "identity of interest" with a party named in the EEOC charge. *Romain*, 836 F.2d at 245. The Sixth Circuit employs two means for determining if the named party shares an identity of interest with the unnamed party. *Id.*

In the first method, a court may find an identity of interest where the unnamed party "has been provided adequate notice of the charge under circumstances which afford him [sic] an opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Id.* (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir.1981)).

The second method directs a court to consider four factors to determine if an identity of interest existed between the named and unnamed parties at the time the plaintiff filed the charges. Those considerations include:

(1) [W]hether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

(2) [W]hether, under the circumstances, the interests of a named [party] are

so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(3) [W]hether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and

(4) [W]hether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* (*quoting Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977)). According to the Sixth Circuit, this method "implies that the named and unnamed parties are virtual alter egos." *Knafel,* 899 F.2d at 1481 (6th Cir.1990).

Applying these two methods to this case indicates that GEO Care and Home Instead lacked the necessary identity of interest. Aside from Mr. Moore, the only entity named by Ms. Baetzel in the OCRC and EEOC charges was GEO Care dba Home Instead Senior Care. (Baetzel Complaint Exhibit A). Because Ms. Baetzel did not name franchisor Home Instead, this Court examines whether the identity of interest exception applies.

■ Pursuant to the first method, this Court considers whether Home Instead received adequate notice of Ms. Baetzel's discrimination charge. In *Alexander v. Local 496, Laborers' Int'l Union of North America,* the Sixth Circuit found an identity of interest under this test between a national labor union and a local union when the national union knew of the EEOC charges filed against the local. 177 F.3d 394, 412 (6th Cir.1999). In *Alexander,* the national union learned of the charges from local and regional officials and received copies of the charges from the EEOC. *Id.*

In this case, however, the testimony indicates that Home Instead simply did not receive notice of Ms. Baetzel's charges. Indeed, despite a provision of the Agreement which requires GEO Care, Inc. to provide written notice to Home Instead, within five days after "the commencement of any action, suit, proceeding or investigation," Mr. Moore did not discuss Ms. Baetzel's claims with anyone at the franchise office. (Moore Aff. ¶ 6, 18; Pl. Br. in Opp., Ex. C at 15). Moreover, Ms. Baetzel testified that she spoke only to Mr. Moore about his behavior in the workplace and did not contact anyone at Home Instead. (Baetzel Dep. 84: 11, 13). Consequently, the absence of notice to Home Instead prevented it from participating in conciliation proceedings and compels this Court to refuse to find an identity of interest between GEO Care and Home Instead with regard to Ms. Baetzel's charges.

■ Moving to the second method recommended by the Sixth Circuit, this Court first considers whether Ms. Baetzel could have reasonably ascertained Home Instead's role at the time she filed the EEOC charge. Ms. Baetzel avers that she regarded the interests of GEO Care and Home Instead as similar enough to not require she provide the specific legal names of both entities in her EEOC charge. (Baetzel Aff. ¶ 16). Yet, Ms. Baetzel knew that GEO Care was a franchise and Home Instead existed separate from that franchise. (Baetzel Depo. 134: 20, 100: 13–24). This Court concludes that Ms. Baetzel could have garnered Home Instead's separate status prior to the time of her EEOC filing.

Secondly, this Court considers whether GEO Care operated as Home Instead's alter-ego to the degree that including Home Instead in the EEOC charge would prove redundant. Ms. Baetzel points to Home Instead's efforts to maintain and

control a standardized franchise product in its dealings with GEO Care as evidence of an integrated enterprise.[1] That Home Instead controls certain aspects of GEO Care's business operations does not, however, demonstrate that its interest in obtaining conciliation and compliance at the EEOC proceeding was sufficiently aligned with GEO Care's to justify an exception to the naming requirement. Because this case involves allegations of sexual harassment against GEO Care's owner, Mr. Moore, Home Instead's interests could reasonably diverge from those of GEO Care's at the EEOC proceeding. Mr. Moore, the accused and owner of a single franchise, would find it more advantageous to contest the discrimination charge than would Home Instead, whose interests extend to preserving goodwill for all of its franchises and protecting its customers from threats to their health or safety.[2] Consequently, this Court concludes that GEO Care and Home Instead did not share such common interest in this matter that GEO Care could represent the unnamed Home Instead.

Thirdly, this Court considers whether Home Instead's absence from the EEOC proceeding may have resulted in actual prejudice. Because the unnamed Home Instead did not have an opportunity to consider voluntary conciliation and could not preserve evidence for use in its defense, this Court concludes that Home Instead suffered prejudice. *See Romain,* 836 F.2d at 245.

Finally, this Court considers the degree to which Home Instead represented to Ms. Baetzel that her relationship with the franchisor evolved solely through GEO Care. Ms. Baetzel avers the "national office's" employment policies directed her to report sexual harassment to either a supervisor, recruiting coordinator, or franchise owner. (Baetzel Aff. ¶ 8, 9). Home Instead avers they did not establish, review or enforce personnel policies at GEO Care. (Huber Aff. ¶ 21, 22, 23). Because Ms. Baetzel had neither a supervisor nor a recruiting coordinator to whom she might report the alleged harassment, the policy directed her to report the offending activity to Mr. Moore himself. While this situation reflects on the adequacy of GEO Care's harassment policy, it does not suggest Ms. Baetzel's only relationship with Home Instead was through GEO Care. Instead, it suggests that Ms. Baetzel's only relationship was with GEO Care. Accordingly, this Court concludes that Home Instead did not represent that it had an employment relationship with Ms. Baetzel.

As Ms. Baetzel has not proven an identity of interest between Home Instead and GEO Care sufficient to surmount the jurisdictional challenge, this Court will dismiss her Title VII claims against defendant Home Instead.

---

1. For instance, Home Instead requires GEO Care to: maintain minimum gross sales, pay Home Instead, Inc. 5% of its sales, meet certain qualifications, only offer approved services, utilize prescribed formats, designs, methods, specifications, standards, operating procedures, and licensing marks, send its managers to an approved training program and operate in a designated geographic location. (Pl. Supplemental Motion, Exhibits A–2 through 6).

2. Home Instead retained authority to terminate GEO Care's franchise under a variety of circumstances including 1) if Mr. Moore was convicted or pled guilty to a felony, a crime of moral turpitude, "or any other crime or offense Franchisor believes is reasonably likely to have an adverse effect on the System, the Licensed Marks, the goodwill or Franchisor's interests" and 2) "if a threat or danger to public health or safety results from the operation of the Franchised Business." (Pl. Motion in Opposition, Exhibit C).

## B. Summary Judgment is appropriate where Home Instead did not act as Ms. Baetzel's employer.

Home Instead moves for summary judgment on all of Ms. Baetzel's federal and state statutory claims because, as a matter of law, it did not act as her employer. Ms. Baetzel urges this Court to consider Home Instead and GEO Care as a single employer because together they constituted an integrated enterprise. (Pl's. Brief at 3).

Establishing a prima facie case under Title VII and state statute requires Ms. Baetzel to show, as a threshold matter, that Home Instead functioned as her employer.[3] *See Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062, 1069 (10th Cir.1998). Courts rely upon several tests for ascertaining employer status, and hence the liability under federal law, of a franchisor entity, such as Home Instead, which does not hold a direct employment relationship with a claimant, such as Ms. Baetzel.[4] Along with the Fifth and Eighth Circuits, the Sixth Circuit has adopted a four-part test for determining when parent companies may be considered employers of a subsidiary's employees. *See Radio Union v. Broadcast Service,* 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965); *NLRB v. Borg Warner Corp.,* 663 F.2d 666 (6th Cir.1981) *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2903, 73 L.Ed.2d 1313 (1982); *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1362 (10th Cir.1993); *Evans v. McDonald's Corp.,* 936 F.2d 1087, 1090 (10th Cir.1991) (franchisor's implementation of system-wide standards, including those relating to employment practices, proved insufficient to impose liability for Title VII purposes); *see also Whitaker v. Professional Investors Ins. Group,* 977 F.2d 597, 1992 WL 279245, at *1 (10th Cir.1992).

Utilizing the four-part single employer test,[5] courts will treat two entities as a single employer where a court finds: (1) interrelation of operations, (2) common management, (3) centralized control over labor relations, and (4) common ownership or financial control. *See Armbruster v.*

---

**3.** The Ohio Supreme Court has held that, in cases involving alleged violations of R.C. § 4112, courts may use federal case law interpreting Title VII as guidance. *Little Forest Med. Ctr. v. Ohio Civil Rights Comm'n,* 61 Ohio St.3d 607, 609, 575 N.E.2d 1164 (1991). Specifically, in § 4112 retaliation cases, Ohio courts apply the same analysis used for Title VII. *Chandler v. Empire Chem., Inc.,* 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (1994) (citing *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir.1984)). Thus, the outcome on plaintiff's Title VII retaliation claim dictates the outcome on plaintiff's § 4112 claim. Because this Court finds that defendant Home Instead is entitled to summary judgment on plaintiff's Title VII claim, defendant's motion for summary judgment will be granted as to Ms. Baetzel's § 4112 claim.

**4.** Courts use several means of ascertaining employer status. For instance, the joint-employer test focuses on the entities' relationships to a given employee or class of employees, where a worker may be employed by one organization and her work is subject to control by another entity. Thus, two entities may both be a worker's employer if they share or co-determine those matters governing the essential terms and conditions of employment. *See, Carrier Corp. v. NLRB,* 768 F.2d 778 (6th Cir.1985); *Sizova v. Nat'l Inst. of Standards & Tech.,* 282 F.3d 1320, 1330 (10th Cir.2002). Courts also examine whether an entity is an employer pursuant to agency principles where one entity consents to act on behalf of another and is subject to the other's control. *See Deal v. State Farm County Mut. Ins. Co. Of Texas,* 5 F.3d 117 (5th Cir.1993). In this case, both parties properly address Home Instead's status through the lens of the four-part single-employer analysis, the controlling doctrine in the Sixth Circuit. *Armbruster v. Quinn,* 711 F.2d 1332, 1336 (6th Cir.1983).

**5.** This approach is also referred to as the "NLRB," "economic realities," or "integrated enterprise" test. 1 Lex K. Larson, Employment Discrimination § 4.02, at 4–11 to 4–12 (2d ed.1998).

**640**

*Quinn,* 711 F.2d 1332, 1336 (6th Cir.1983); *Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1241 (2d Cir.1995); *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933 (11th Cir.1987). Courts adopting the single employer approach have emphasized that a broad interpretation should be given to the employer and employee provisions of Title VII to effect its remedial purpose. *See Armbruster v. Quinn,* 711 F.2d at 1336; *Ivan v. Kent State Univ.,* 863 F.Supp. 581, 585 (N.D.Ohio 1994).

## C. Single–Employer Doctrine

### 1. Interrelation of Operations

■ Even applying the broadly construed single-employer approach, Ms. Baetzel has failed to meet her burden of establishing that Home Instead was her employer. Underlying the single employer test is the requirement "that there be sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Armbruster,* 711 F.2d at 1337. Utilizing the four-part single employer test for determining whether this Court should construe Home Instead and GEO Care as a single employer, the evidence considered in the light most favorable to Ms. Baetzel does not establish the two entities have the requisite interrelation of operations. GEO Care owns the equipment and supplies at its site in North Olmsted, rents the facility, maintains separate bank accounts, books, accounting records, lines of credit, and payroll and personnel checks. Neither entity may make any express or implied agreements, guarantees or representations in the name of the other and the Agreement explicitly provides that no fiduciary relationship exists between GEO Care and Home Instead. Home Instead, the franchisor, retains the authority to require GEO Care, as a franchisee, to adhere to the Home Instead "System" to ensure uniformity and standardization of the brand's services.

In her effort to establish the required "interrelationship" between Home Instead and GEO Care, Ms. Baetzel principally relies on directives issued to maintain the standardization of Home Instead's brand. These include evidence that the franchisor has a power of attorney with regard to franchisee's Yellow Pages and White Pages business listings (Pl. Supplemental Brief, Exhibit D), correspondence on marketing advice (Exhibit F), franchisee owner training (Exhibit C), use of standardized business software (Exhibit F), an offer for group insurance rates (Exhibit I), a two day training seminar for Customer Service Representatives (Exhibit H), and marketing talking-points to entice new customers by suggesting that Home Instead, as a whole, generates more revenue than its closest competitor (Exhibit K).

Courts have routinely found this type of evidence of standardization insufficient to satisfy the showing of interrelated operations and control over labor relations required by the single employer test. *Evans v. McDonald's Corp.,* 936 F.2d at 1090 (franchisor's implementation of system-wide standards, including frequent inspections and training for franchise employees, proved insufficient to impose liability for Title VII purposes noting that "[o]utside of the necessary control over conformity of standard operational details inherent in many franchise settings, McDonald's only real control over [franchisee] was its power to terminate his franchises"); *Scales v. Sonic Industries, Inc.,* 887 F.Supp. 1435, 1438 (E.D.Okla.1995) (Sonic's operations manual and policies insufficient as a matter of law to show that franchisor controlled labor relations of franchisee's employees; manual and policies merely allowed franchisor to attain

its goal of achieving conformity to its operational standards in its franchises); *Alberter v. McDonald's Corp.*, 70 F.Supp.2d 1138 (D.Nev.1999) (McDonald's personnel policies contained in business manuals provided to franchisee do not establish control by McDonald's over employment matters at franchise restaurant).[6]

## 2. Common Management

As to common management, the uncontested evidence indicates that between Home Instead and GEO Care, there are no common financial control or ownership interests, no common officers or directors, and no joint use of offices, equipment or employees; and Home Instead and GEO Care maintained separate bank accounts and financial records.

## 3. Centralized Control of Labor Relations

Several courts have observed that the key factor in the four-part single employer test is whether the putative employer has centralized control of labor relations. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2nd Cir.1995); *Frank*, 3 F.3d at 1363; *Evans v. McDonald's Corp.*, 936 F.2d at 1090. As one court observed, "the critical question is, 'What entity made the final decisions regarding employment matters related to the person claiming discrimination?'" *Lockard v. Pizza Hut, Inc.* 162 F.3d at 1070 (*quoting Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)); *Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213, 1219 (10th Cir.2002) (observing: "[m]ost important to control over the terms and conditions of an employment relationship is the right to terminate it under certain circumstances").

Pursuant to the single employer doctrine, and finding no control over labor relations, the Tenth Circuit Court of Appeals granted summary judgment in favor of the franchisor in *Lockard v. Pizza Hut, supra.* In *Lockard,* as in this case, the undisputed facts established that the franchisor did not participate in the hiring, promotion, retention, discipline or discharge decisions of franchisee employers, compelling the court to conclude that the franchisor was not an employer for discrimination purposes. *Lockard v. Pizza Hut, Inc.*, 162 F.3d at 1071; *see also Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 995–96 (6th Cir.1997) (finding that a university and the bookseller with whom it had contracted to run its bookstore could not be considered a single employer where the university had retained control over which employees could be assigned to staff the bookstore, but had no control over the bookseller's hiring or firing decisions).

Viewing the evidence in deference to Ms. Baetzel, the record indicates a lack of centralized control of labor relations on the part of Home Instead where: (1) Ms. Baetzel was never officially employed by Home Instead; (2) Home Instead did not own or operate GEO Care and did not participate in any of the employment related decisions regarding GEO Care's employees; (3) Home Instead did not direct Ms. Baetzel's work performance; (4) Home Instead did not pay Ms. Baetzel for her work nor was she provided with any employment benefits through the franchisor; (5) Home Instead did not pay any unemployment compensation taxes or other similar taxes on behalf of Ms. Baetzel.

---

**6.** Courts consistently recognize the duty of a franchisor to protect its trademark and service marks. *Raines v. Shoney's, Inc.*, 909 F.Supp. 1070 (E.D.Tenn.1995). Home Instead's training and operations manuals reflect the principal basis upon which the franchisor attains the conformity to certain operational standards and details necessary for a franchise system. Despite this conformity, the evidence suggests the manuals do not vest ultimate control over labor relations in Home Instead.

Despite an absence of control over GEO Care's employment decisions, Ms. Baetzel, nevertheless, urges this Court to recognize Home Instead as her employer predicated on the Agreement between the two entities. (Plaintiff's Brief in Opposition at 7; Exhibit C). Ms. Baetzel specifically points to the training programs required of the franchisee manager in Section Five of the Agreement. Yet, the Agreement also severely limits the franchisor's reach with regard to training, where, in the same section it directs:

> Franchisee must hire all employees of the Franchised Business, be exclusively responsible for the terms of their employment and compensation and implement a training program for employees of the Franchised Business in compliance with Franchisor's requirements. Franchisee agrees to maintain at all times a staff of trained employees sufficient to operate the Franchised Business in compliance with Franchisor's standards.

(Plaintiff's Brief, Exhibit C at 6).

Much as other courts have observed, in cases such as this, a "parent's broad general policy statements regarding employment matters are not enough" to make the required showing of centralized control over labor relations. *Frank*, 3 F.3d at 1362. "To satisfy the control prong, a parent must control the day-to-day employment decisions of the subsidiary." *Id.* In holding that a franchisor was not a Title VII employer with respect to the employees of an independently-owned franchise, courts are not persuaded by evidence that the franchisor "may have stringently controlled the manner of its franchisee's operations, conducted frequent inspections, and provided training for franchise employees," when the franchisor did not have control over its franchisee's labor relations or financial control over the franchisee. *Evans*, 936 F.2d at 1090.

In contrast to the evidence at hand, the Second Circuit has held that control over labor relations was established where the evidence demonstrated that the parent ran its wholly-owned subsidiary in a direct, hands-on fashion: applications for employment with the subsidiary went through the parent, all personnel status reports were approved by the parent, and the subsidiary cleared all major employment decisions with the parent. *See Cook*, 69 F.3d at 1241. Similarly, the Sixth Circuit has held that a parent company and its wholly-owned subsidiary could be considered a single employer for Title VII purposes where the parent by practice and policy authorized all purchases over $200 made by its subsidiary, the parent handled its subsidiary's payroll and cash accounting and monitored all sales shipments, and the parent approved all of the subsidiary's hiring decisions. *See Armbruster*, 711 F.2d at 1338–39; *see also Frank*, 3 F.3d at 1363 (listing type of evidence routinely used to show interrelated operations and control over labor relations: parent kept subsidiary's books, issued its paychecks, and paid its bills; parent and subsidiary had common employees, shared services, equipment, employees and office space; parent controlled subsidiary's payroll and benefit program).

### 4. Common Ownership or Financial Control

The uncontroverted facts indicate that GEO Care and Home Instead do not share ownership or financial control. As per the Agreement, GEO Care maintains the entire equity interest in the entity and retains all profits from operation, but for an agreed upon percentage represented as a franchise royalty fee paid to Home Instead. GEO Care also maintains separate ownership and control over all operating expenses and salaries.

Accordingly, this Court's conclusion that Home Instead did not function as Ms. Baetzel's employer compels it to dismiss all federal and state statutory claims against the defendant by granting Home Instead's motion for summary judgment.

### IV. Ms. Baetzel's Wrongful Discharge Public Policy Claim

■ The Ohio Supreme Court has stated that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged ... for a reason which is prohibited by statute." *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 234, 551 N.E.2d 981 (1990). The Court clarified this statement by explaining "to state a claim of wrongful discharge in violation of public policy a plaintiff must allege facts demonstrating that the employer's act of discharging contravened a 'clear public policy.'" *Painter v. Graley*, 70 Ohio St.3d 377, 383, 639 N.E.2d 51 (1994). To establish her claim, Ms. Baetzel must show:

1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law.
2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy.
3. The plaintiff's dismissal was motivated by conduct related to the public policy.
4. The employer lacked overriding legitimate business justification for the dismissal.

*Collins v. Rizkana*, 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653 (1995).

The Ohio Supreme Court has held that workplace sexual harassment violates clear public policy. *Id.* at 73, 652 N.E.2d 653. Additionally, O.R.C. § 4112 prohibits retaliation against an employee who has reported allegations of prohibited discrimination against the employer. *See Chandler v. Empire Chemical Co.*, 99 Ohio App.3d 396, 402, 650 N.E.2d 950 (1994). Indisputably then, Ohio has an unambiguous public policy against retaliation for reporting sexual harassment in the workplace.

■ However, Ms. Baetzel must allege facts demonstrating that the employer's act of discharging contravened a clear public policy. As in this Court's previous Title VII analysis, Ms. Baetzel cannot surmount the threshold issue of showing that a genuine issue of material fact exists warranting consideration of Home Instead as her employer. Accordingly, this Court dismisses the plaintiff's wrongful discharge public policy claim against defendant Home Instead, Inc.

### V. Intentional Infliction of Emotional Distress

Ms. Baetzel's claim against Home Instead for intentional infliction of emotional distress will lie where "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (1983) (citing Restatement (Second) of Torts § 46(1) (1965)). The Ohio Supreme Court has stated that "liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 375, 453 N.E.2d 666. "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'," and "[t]here is no occasion for the law to intervene in every case

where some one's [sic] feelings are hurt." *Id.*

■ Because Ms. Baetzel's claim against Home Instead is predicated on the now unfounded basis that the franchisor is her employer, there is no legal support for a finding of intentional infliction of emotional distress. Assuming, *arguendo*, Ms. Baetzel had demonstrated Home Instead could be found liable under Title VII, such a conclusion would not be enough, for it is well-established under Ohio law that discrimination, by itself, is insufficient to support an intentional infliction of emotional distress claim. *See Bryans v. English Nanny and Governess Sch., Inc.*, 117 Ohio App.3d 303, 690 N.E.2d 582, 592 (1996). As articulated by the Sixth Circuit:

> But an employee's termination, even if based upon discrimination, does not rise to the level of "extreme and outrageous conduct" without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress.

*Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir.1999); *See Baab v. AMR Services Corp.*, 811 F.Supp. 1246, 1269 (N.D.Ohio 1993) (making the observation: "[t]o say that Ohio courts narrowly define 'extreme and outrageous conduct' would be something of an understatement").

This Court finds Home Instead did not employ Ms. Baetzel. Moreover, any direct contact plaintiff had with Home Instead was *de minimus*, consisting of a single visit from the president of Home Instead who came to GEO Care for an hour while attending a conference in Ohio. (Baetzel Depo. 100: 13–24, 157: 12). Accordingly, this Court dismisses Ms. Baetzel's state claim of intentional infliction of emotional distress against Home Instead.

## VI.  CONCLUSION

For the reasons set forth above, this Court dismisses all of Ms. Baetzel's federal and state statutory and common law claims against defendant Home Instead, Inc.

IT IS SO ORDERED.